Good morning and may it please the court, Juliana Manzanares on behalf of the defendant Juan Pablo Garrido Chilaca. At this time I'd like to reserve two minutes for rebuttal. We're here today because the district court erred in not suppressing the statements that Mr. Chilaca made during his almost two-hour interrogation with the FBI. For Mr. Chilaca, these procedural safeguards under Miranda were not effective to secure the privilege of self discrimination, and as a result, his waiver of his Miranda rights could not have been knowing, intelligently, or voluntarily waived. What do we do with the district court's finding to the contrary? How do we review that? De novo, Your Honor, as far as my understanding. Well, I guess there's two parts to this. One, we might review de novo compliance with Miranda, but it looks to me here as if the Miranda warnings were read in their entirety, and let's assume for a moment that I don't think you had to start over again after they were given. With respect to the voluntary, with respect to whether or not your client understood the Miranda warnings, how do we review the district court's finding? I believe that would be the totality of the circumstances. Sure, but don't we review it for substantial evidence or abuse of discretion? There was a hearing. Was there not? There was, Your Honor, but I was not the attorney at the hearing. No, I understand. No blame. No blame being assigned. There was a hearing and there was testimony, and the judge heard witnesses and said, I believe that your client understood the warnings. How do we review that finding? Your Honor, I'm not entirely sure, to be honest. Okay. And if I can understand your arguments correctly, there are essentially three points that you argue undermine the credibility of the finding of voluntariness and knowingness of the waiver. One is that the district judge did not suppress everything that followed the Miranda warning despite the questions about immigration, despite the suppressing of the telephone number question, and the final one is that the district judge allowed the off-script addition to the Miranda warning to stand and not vitiate the effectiveness of that warning. Of those three arguments, which is your strongest and what's your best authority? Right now, it would be the allowing of the off-script additional info of the reading of the Miranda. There are several cases that seem to permit some deviation from the warning as long as the court finds that there is not a such confusion or misleading effects of the off-script addition to make the warning ineffective. How do you deal with those cases here? What makes this case different? Your Honor, I would say this makes this case different because he's reading from a Spanish language already in Miranda form. He does pronounce the agent in this case does pronounce a couple of words differently that kind of change the meaning of the Miranda, and I believe that Mr. Chalaka testified at the evidentiary hearing that he didn't understand the end very well, which is the additional info that the agent added to the Miranda warning. And that's why I asked. The judge, the trial judge in this case, didn't seem to believe Mr. Chalaka that he didn't understand the warnings. Right. And I think we have to defer to that evidentiary finding. At least that's my thought here. Why don't we defer to that evidentiary finding? Your Honor, I believe that this case involves a lot more than just Mr. Chalaka's special circumstance, more so Miranda warnings that are given in a different language that are being translated from a Spanish-language form. I think that this is a case that would need to kind of look at the detailed circumstances and see if this defendant actually understood the warnings that were given. So tell me what error, I understand that argument, Gesundheit, tell me what error you think the district judge made in analyzing the totality of the circumstances. I believe she, or the district court judge, didn't take into account the language difficulties. To talk about it and find that there was no difficulty in understanding each other. I think there was no difficulty in understanding things, and like the government pointed out during the trial, was sure he answered some questions in English that were, do you know what dropbox is in Instagram? Those things don't have a translation into Spanish. And I think not taking that into account is where the district court judge erred. Can I, I understand why you may be reluctant to spend time on this issue, but I want to ask you to address the sentencing issue. Because I understand your client has concurrent sentences and. Yes, Your Honor. With respect to the sentencing issue, what relief are you seeking? At minimum, a remand. Can't we just fix it? Can't we just say he shouldn't have been convicted on four counts, he should have only been convicted on one? And remand, remand, I'm sorry. Yes. Okay, yeah. Yes. That's the relief you're seeking? Yes, Your Honor. But not a new trial, if I take that to be the point of the question. Correct. Okay. So tell me why you think there should be one count rather than four. Yes, Your Honor. To the double jeopardy issue here, he's being punished twice for a single crime. And in the opening brief that Mr. Maldonado wrote, I believe he cites to a First Circuit and a Second Circuit case, which we're asking this Court to adopt the reasoning of. Well, in fact, every circuit who's addressed this issue has ruled in your favor, your client's favor, correct? I am not aware of every circuit, Your Honor. Do you know of any contrary authority to your position? I did not, Your Honor. That's a good position to be in. I believe that the reasoning in the First Circuit, though, that we cited in the opening brief follows Mr. Chalaka's case, at least in Charido. There, the court found, looked at whether there's a sufficient factual basis to treat each count as separate, and they looked at whether Congress intended what the intention was for the proper unit. And in that case, they found that a person who simultaneously possesses a multitude of forbidden images in a single time, in a single place, have only committed a single offense. He could have been charged, I take it, under 2252A, with multiple counts, in your view. Is that correct? I believe so, Your Honor. But I think the matters that the government charged with, which I believe we're saving it on extra hard drives, which ended up being the four counts, isn't the proper unit of how Congress intended the statute to be written. Instead, they write one or more videos, books, magazines, not hard drives, CDs, files, Dropbox accounts, whatever that might be. Is there a difference between the Dropbox account and the hard drives? Your Honor, I'm not too sure. Just reading from the record, I believe that he would save the images from somewhere on Dropbox and then maybe download those same images on the hard drive. I think that's what he did, but is there, or he used it to access, so that, but my question is whether the difference in the type of medium, storage medium, between a hard drive on the one hand and a Dropbox account on the other makes a statutory difference. I don't, I don't believe so, because the statute actually doesn't talk about the actual medium. So it's just all matters because they're all capable of containing physical images, containing visual images of child pornography. Correct. You wanted a same-subtype for rebuttal. Yes, Your Honor. I'm reminding you that you're close to that time. Yes, Your Honor. In this case, his. That means if you keep talking, you're not going to be able to rebut. Gotcha. Okay, then I will reserve the rest of my time. Thank you. Thank you. Mr. Kosinitz. May it please the Court, I'm Peter Kosinitz from the U.S. Attorney's Office in Phoenix. When did you go to the government? About five years ago. Okay. Welcome. Thank you. Welcome. Thank you. Jumping to the second issue, if I may, right away. Okay.  are grouping rules that also apply to the same-subtype, I'm wondering if you could explain to the client of the guidelines, is this a matter of how many angels dance on the head of a one or more pin? That is, it's an interesting statutory issue, but in effect, what will the consequences be on the ground? Well, in some respects, I think that's correct, Your Honor, but I think that there are critical and very valid reasons why these types of counts should be charged. Well, yeah, but that's a separate question to one Judge Rosenthal asked. Does this make any difference in this case? Well, it shouldn't make any difference for sentencing. And if it doesn't, why should we jump into it? Because for a number of reasons, charging in this manner is more protective of the defendant's rights. It reduces risks of jury confusion, and it's ultimately consistent with the way the statutory language has been constructed. The defendant doesn't think it's more protective of his rights. He would like to only be convicted of one crime rather than four. So, I'm not sure why I thought, I guess the question is, let me put this to you differently. We shouldn't create circuit splits. We're told that. Three other circuits have interpreted this statute in a way that your opponent interprets it. It makes no difference in this case. You really want us to decide this issue? On these facts? Well, respectfully, Your Honors. Because what you're going to get, I think, is a decision that says we agree with the other three circuits. So, you'll have clarity, but it won't be the clarity you want. And it's in a case that makes no difference. Now, not your decision. So, you didn't charge, you know, I don't know who charged the case, and I don't know how the decision was made. But it sort of strikes me as, why are you doing this? Well, I think it is important to have clarity in this area. And I think that when the government charged as it did here, it was responding to a prior motion to dismiss the initial indictment, which was criticized for not being specific enough. I understand that we have dictum in another case that suggested that perhaps it should be done this way. So, I'm not critical of the original decisions. I'm just trying to figure out why the government even contests this issue on appeal. Just for purposes of argument, you could have said, without giving up the issue, we'll drop the other three counts. But you haven't made that decision, and it's yours. So, let me ask a question about the old statute. The old statute said three or more. That's right. If somebody had six, how many counts would there be? Under the old statute? Under the old statute. Six counts or two? Well, it's, under this approach here, if there were six separate storage devices or locations, there could be six. So, just focusing on the old statute for a second, the language three or more suggested to me that we're going to impose this crime on somebody who has three or more. And it's a crime. A crime. Much easier to interpret it in the old statute when it said three or more than now when it says one or more. But if my interpretation of the old statute is right, that three or more just meant no matter how many you had more, three or more, you had one crime, why isn't one or more one crime? I'm sorry. Why isn't one or more? Why isn't one or more one crime? I look at the legislative history, and Congress said, you know, we're letting people who have two not violate the statute, and we need to be tougher on these people. That's right. So, let's move it down to one. That's right. And so, the real question is, use the language of the old statute and tell me why you thought three or more meant that any time you had more than three, it was separate crimes rather than one. Well, I would imagine, I mean, I haven't charged anything under the old statute, but I would imagine that the old statute would recognize that as long as there are at least three, the defendant can be charged. And the defendant, and then you get... But the defendant only had two under the old statute, no charge. Right. That's right. That's right. So, then... So, Congress moves it down to one. Recognizing in the legislative history that they wanted to punish any... Be tougher. I mean, look, the legislative history is of no real help. We just want to be tougher on people. It used to be that it was okay to have two. That's a terrible thing. Let's move it down to one. It doesn't tell me whether there are separate charges. It just tells me Congress wanted to be tough on people with these images. And then you look into the meaning of one or more. And the dictionary definition of any is interchangeable with one or more, as Judge Zapata recognized in the United States v. Flyer case. But nobody else is recognized in looking at these two statutes. Well, the Plank case from, I believe, the Fifth Circuit... But they were looking at the statute that said any, not the statute that said one or more. Well, actually, 2255a says a. Right. Somebody who possesses a, blank, blank, blank. Is there a difference between a and one or more? No, because the a statute uses the word any. The dictionary definitions are the same. So why did Congress use different language, then? If it meant the statutes to cover exactly the same thing, why did they use different language twice, three or more and then one or more? And I'm not asking you to explain the mind of a legislator. I'm asking you to be Brian Garner-esque on this and to say, assume that Congress used different language. Did they meant a different thing? I don't think so, Your Honor. I think they were just tinkering with the language that they had and bringing it to the one or more standard. Does your result depend on equating any with one or more? It doesn't necessarily... How can we avoid making that meaning equivalent and reach the result you want? Well, I think you can make that equivalence. And I think that even without that equivalence... Indeed, you think we should. I do, Your Honor. I do. Because the dictionary... But I guess my construction is, must we make that equivalence in order to reach a result? I don't think so, Your Honor, because in order to avoid absurd results and to give this statutory language a reasonable construction, allowing multiple units of charging based on these different storage locations is appropriate. As I mentioned, it's reasonable and logical. It allows the government and the jury to focus the proof on these different storage devices. As the defendant argued in closing statements, the jury should focus on each of those charges and assess the evidence with respect to each one. It provides very clear and specific notice to the defense as to what is being charged, and it ultimately makes the trial easier, easier to understand. So let's go back to the old statute again. When somebody had three, was it three crimes? Under the... Old statute that said three or more. Right. And you had three. Was it three crimes? I believe it could have been charged that way. Depending on different storage media. Correct. Correct. If we didn't agree with you and wanted to address your kind of floodgates argument that it would let someone who had zillions of images be treated the same way as someone who had two. Right. Isn't the answer to that, well, charge receiving as opposed to merely possessing? The government, there are different ways of charging that would avoid that consequence. That's true, but there's also different evidentiary hurdles that may factor into the charging decision as well. So there could be very real reasons for just charging possession-type counts. So your solution would then be to go to Congress unless we created a circuit split. Is that the choice we face or you face? Well, I don't think, I mean, if you look carefully at these out-of-circuit decisions, they rely heavily on the distinction between the words any and one or more. You think they're wrong. I do. I think they're wrong because there's really no logical, there's no logical difference. The dictionary definitions are the same. The legislative history for this statute that we're talking about in this case emphasizes repeatedly we're prohibiting any possession of child pornography. So the meaning is the same. The legislative history points in that direction. Only they didn't use the word any. That kind of wipes out one, that wipes out the words or more. It removes them. But for purposes of. It means at least one. Well, actually from a common-sense dictionary definition, it means one or more than one. So it contemplates both. Before you sit down, I wanted to ask you one other question on this. There's language in one of our decisions which is helpful to you. Do you agree that that's dictum? In the Shales case, Your Honor? Yes. Or we're not that. Shales doesn't decide this issue, does it? No. It expresses a view on this issue, to be sure, but it doesn't decide it. Well, Shales is a case that involves charges of receipt and possession. Right. Instead of multiple counts of possession. I do agree with that. But I think Shales is looking at the reality of how in the electronic age these counts should be charged and recognizes that when you're dealing with different storage units, different media, different charges are appropriate and constitutional.  Thank you, Your Honors. You wisely saved some time for rebuttal. Thank you, Your Honor. I would disagree with the government in that the statute should be charged based on storage units. The statute, as it's written, is knownly possessing one or more books, periodicals, visual depictions, photographs. It doesn't necessarily explicitly say on different hard drives or CDs or whatever the medium is to store it. So I believe how it's written, Congress intended it to be a single offense when you possess one or more of those forbidden images. That's all I have. Thank you, Your Honor. You're not required to use all your time. You get to save it for your next argument. Thank you, Your Honor. Thank both counsel for their briefs and arguments in this case. And this case will be submitted.
judges: Hawkins, Hurwitz, Rosenthal